IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Edmond Jerome Mayes, <br> aka Edward Jerome Mayes, <br>                       Plaintiff, <br><br> vs. <br><br> Deputy Sheriff P W Swift, #815, <br> Greenville County Sheriff's Dept.; <br> Deputy Sheriff B. Tollison, #648, <br> Greenville County Sheriff's Dept.; <br> Deputy Sheriff MDS Rhea, #712, <br> Greenville County Sheriff's Dept., <br><br>                       Defendants. | Civil Action No. 6:10-2991-TMC-KFM <br><br> **REPORT AND RECOMMENDATION** |

       This matter is before the court on the defendants' motion for summary judgment (doc. 57). The plaintiff, a state prisoner proceeding *pro se*, filed his complaint seeking relief pursuant to Title 42, United States Code, Section 1983.

       Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

       On April 25, 2011, the defendants filed a motion for summary judgment. By order filed the next day, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The plaintiff filed a timely response on June 2, 2011, to which the defendants filed a reply on June 23, 2011. The plaintiff supplemented his response on June 27, 2011.

## **FACTS PRESENTED**

On the evening of May 16, 2008, a group of law enforcement officers, including Greenville County Deputies Swift, Tollison, and Rhea, convened at a nightclub in Greenville County to arrest the plaintiff on an outstanding warrant from neighboring Pickens County. The plaintiff was spotted inside the club and was asked to step outside. As he exited the building, the plaintiff took off running, crossing the street and entering a wooded area, with the officers chasing him.

Here the litigants' factual allegations differ markedly. The plaintiff claims that during the foot chase, he realized that fleeing was a mistake and decided to give himself up. He states that he put his hands in the air, turned around, and began walking back towards the officers. Deputy Swift then tasered him in the chest, causing him to fall to the ground. Deputy Swift then "drive stunned" him twice and got on top of him. Deputy Tollison then appeared on the scene and deployed his taser, striking the plaintiff in his back. Deputy Tollison handcuffed the plaintiff's left arm, but was unable to handcuff the right arm because it was under the plaintiff's body as he lay on the ground with Deputy Swift on top of him. He alleges that Deputy Swift tasered him again in the shoulder and that Deputy Tollison tasered him in the ribs. He further alleges that Deputy Tollison struck him in the eye with a closed fist and that Deputy Rhea then arrived on the scene and did the same. The plaintiff states that these actions continued until he told them that he "couldn't breathe from the Tazers," whereupon they stopped, picked him up, and took him back to the other officers. He further alleges that they threatened him "not to go to the hospital." He alleges he was driven from the scene to Pickens County, where he was "turned over." He claims he suffered an injury to his eye during the arrest, as well as injuries from the taser prongs. He seeks $900,000.00 to pay for eye surgery he purportedly requires and to compensate him for other pain, bruising, scarring, and mental/emotional distress.

While the plaintiff alleges he did not resist arrest whatsoever after he stopped running, the defendants testify via affidavit to the contrary. Deputy Swift testifies that when the plaintiff stopped running, he yelled at Deputy Swift and confronted him with his fists balled up. Deputy Swift tripped but was able to fire his taser, striking the plaintiff in the chest and causing him to fall to the ground. However, the plaintiff was not debilitated, and he kicked Deputy Swift while on the ground. Deputy Swift was able to get on top of the plaintiff and continued to taser and strike him because the plaintiff resisted. Deputies Tollison and Rhea then came upon the scene in succession, and both testify that the plaintiff was resisting. Deputy Tollison states that he tasered the plaintiff and struck him with his fist as the plaintiff continued to resist. Deputy Rhea likewise struck the plaintiff with his fist while demanding that he place his hands behind his back. Deputy Rhea testifies that he physically lifted the plaintiff so that Deputy Swift could gain control and handcuff him. Deputy Swift suffered a shattered finger during the incident, requiring emergency room treatment and medication.

In October 2009, the plaintiff was indicted by the Greenville County Grand Jury for resisting arrest with assault, as a result of the May 2008 incident. The indictment charged that he "knowingly and unlawfully [did] assault, beat or wound [Deputy] P.W. Swift with the Greenville County Sheriff's Office ("GCSO") while resisting an arrest by one whom he knew or reasonably should have known was a law enforcement officer." Following his indictment, the plaintiff gave a written statement dated September 10, 2010, to an "internal affairs" investigator with GCSO. The statement is attached to his complaint and contains basically the same factual allegations as made here, but also contains his admission that he did not request medical assistance on the evening of his arrest, even after being turned over to Pickens County authorities. On February 8, 2011, the plaintiff pled guilty to the resisting arrest charge and was sentenced to ten years imprisonment.

**APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

4

*Excessive Force Claim - Defendant Swift*

The plaintiff asserts that he attempted to surrender after running away and did not resist arrest when he came face to face with Deputy Swift. However, the plaintiff pled guilty to that very charge. Pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994), the plaintiff's excessive force claim is barred as to Deputy Swift if, as here, it is clear from the record that its successful prosecution would necessarily imply that the plaintiff's earlier conviction for resisting arrest was invalid. *Id.* at 486-87. While a subsequent guilty plea to a resisting arrest charge does not necessarily foreclose an excessive force claim brought pursuant to Section 1983, *see, e.g., Riddick v. Lott*, No. 05-7882, 615, 2006 WL 2923905, at *2 (4th Cir. 2006), such is not the case here. Unlike in *Riddick*, where the record on appeal was found to be unclear as to whether an alleged punch by the officer occurred before, during, or after the arrest there, the deputies here used force to gain control of the plaintiff *during* the arrest. It is undisputed that while attempting to arrest the plaintiff, the deputies could initially only handcuff one arm. It is also undisputed that the deputies continued to apply force in an effort to gain control of the plaintiff's other arm. While the plaintiff claims that the deputies continued to taser him until he announced that he could not breathe, he does not claim that the tasering or striking continued after he was fully handcuffed. Because the plaintiff pled guilty to resisting arrest with assault as to Deputy Swift and presents no credible proof that excessive force was applied after he was fully handcuffed, his claim is barred by *Heck.*

*Excessive Force Claim - Defendants Tollison and Rhea*

A claim of excessive force during an arrest is reviewed under the Fourth Amendment's objective test for reasonableness under the circumstances present. *Graham v. Connor*, 490 U.S. 386 (1989). The reasonableness of the force employed must be judged from the perspective of a reasonable officer on the scene, and an allowance must be made for the fact that police officers are often forced to make split-second decisions

about the amount of force necessary in a particular situation. *Id.* at 1871-72. Having established that the plaintiff's claim against Deputy Swift is meritless, this court likewise finds the claims against Deputies Tollison and Rhea to be unfounded. It is undisputed that the plaintiff ran from the deputies and led them into a dark wooded area. It is also undisputed that Deputy Swift was the first to encounter the plaintiff in the woods. The plaintiff himself describes that while he struggled with Swift, Tollison and then Rhea came upon the scene and joined in the struggle. A reasonable officer would be expected to come to the aid of a fellow officer who is being assaulted (conduct to which the plaintiff admitted in his subsequent guilty plea). As described above, the parties agree that initially only one of the plaintiff's arms was handcuffed and that the struggle continued as the deputies attempted to handcuff the second arm. Under these dangerous circumstances, Tollison and Rhea should be expected to have applied force necessary to gain control of the plaintiff and in effect rescue Deputy Swift from the combative plaintiff. The use of tasers and the striking of the plaintiff (as described by both the plaintiff and the defendants) while the plaintiff violently resisted being handcuffed in an unlit, wooded area, appears to this court to be reasonable and appropriate force under the circumstances.

### *Deliberate Indifference*

The plaintiff also alleges that he was denied emergency medical treatment on the scene following his arrest. "The due process clause may require state officials to provide medical care to detainees who have been injured during the course of arrest." *Martin v. Gentile*, 849 F.2d 863, 870-71 (4th Cir.1988) (citing *City of Revere v. Massachusetts Gen. Hosp.,* 463 U.S. 239, 244 (1983)). The standard for reviewing medical claims of pretrial detainees under the Fourteenth Amendment is essentially the same as that for a convicted prisoner under the Eighth Amendment—deliberate indifference to serious medical needs. *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir.1992). Not "every claim by a prisoner [alleging] that he has not received adequate medical

treatment states a violation of the [Constitution]." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). To establish deliberate indifference, the treatment must be so grossly incompetent or inadequate as to shock the conscience or to be intolerable to fundamental fairness. *See Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir.1990).

In order to state a claim, "[a] plaintiff must satisfy two elements ...: he must show a serious medical need and he must prove the defendant's purposeful indifference thereto." *Sires v. Berman*, 834 F.2d 9, 12 (1st Cir.1987). A medical need is "serious" if "it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." *Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir.1990).

The plaintiff's claim fails. Following his arrest, the plaintiff made a complaint to the GCSO internal affairs division and gave a statement to a responding investigator. In the prepared statement, which plaintiff signed in approval and which he makes part of the record before this court (doc. 15-1), the plaintiff admits that he did not request medical treatment immediately following his arrest, even though an ambulance was called to the scene. He appears to suggest in his statement that he did not request medical care on the scene because he was threatened. However, this contention lacks any credibility, as the plaintiff himself describes how later that evening he did not request medical help even after being turned over to Pickens authorities who did not take part in his actual arrest. Obviously, an arresting officer cannot be found to be deliberately indifferent to a serious medical need if he is unaware or unadvised of it.

The court has reviewed pictures (docs. 75-1,2) supplied by the plaintiff purporting to show his injuries resulting from the incident. While they do depict what appears to be some bruising and scratching (as one might expect after running through a wooded area in the nighttime and then violently resisting arrest), they do not depict to this court an obvious serious medical condition that would require the attention of a doctor.

Moreover, the plaintiff has failed to provide any medical report or record that would substantiate his claim that he was seriously injured when arrested.  As the plaintiff has failed to bring forth any proof that he had a serious medical need immediately after his arrest and that these defendants were deliberately indifferent to it, his case should be dismissed.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, this court recommends that the defendants' motion for summary judgment (doc. 57) be granted.

December 12, 2011                                                             s/Kevin F. McDonald
Greenville, South Carolina                                                 United States Magistrate Judge