IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Edmond Jerome Mayes,<br>a/k/a Edward Jerome Mayes,<br><br>   Plaintiff,<br><br>v.<br><br>Deputy Sheriff PW Swift, #815, Greenville County Sheriff's Dept.; Deputy Sheriff B. Tollison, #648, Greenville County Sheriff's Dept.; Deputy Sheriff MDS Rhea, #712, Greenville County Sheriff's Dept.,<br>   Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CA No. 6:10-2991-TMC<br><br><br><br>**ORDER** |

  Plaintiff Edmond Jerome Mayes, a/k/a Edward Jerome Mayes (Mayes) filed this complaint against the defendants, Greenville County Sheriff's Office Deputies Patrick Swift (Swift), Brian Tollison (Tollison), and Steve Rhea (Rhea), pursuant to 42 U.S.C. § 1983, alleging excessive use of force and deliberate indifference to his medical needs. (Dkt. No. 1, 30.) This matter is before the court for review of the Report and Recommendation (Report) of the United States magistrate judge made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 of the District of South Carolina. (Dkt. No. 81.)[1] The Report recommends granting the defendants' motion for summary judgment. (Dkt. No. 57.) The court adopts the Report and grants the defendants' motion for summary judgment. (Dkt. No. 57.)

**I.**

---

[1]  The magistrate judge's recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The court is charged with making a de novo determination of those portions of the Report to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Report adequately sets out the facts and procedural history, and the court incorporates the Report here. Briefly, the defendants were among a group of law enforcement officers from Greenville County and Pickens County who gathered to arrest Mayes on several outstanding warrants. (Dkt. No. 57-2 at 2; Dkt. No. 57-3 at 2; Dkt. No. 57-4 at 3.) On the night in question, Mayes was at a nightclub on Wade Hampton Boulevard in Greenville County. Some of the officers approached Mayes inside the nightclub, and after verifying that it was Mayes, asked him to step outside. While speaking with the officers, Mayes stated, "Arrest me then," and fled. Swift witnessed Mayes flee from the officers. (Dkt. No. 57-2 at 2.) According to the defendants' version of the story, Swift chased Mayes on foot, through a parking lot, across Wade Hampton Boulevard, and into some woods on the other side of the road, whereupon, Swift stated, Mayes fell down a creek bank. As Swift approached Mayes, Mayes suddenly turned around and moved toward Swift. Swift then tripped, but was able to deploy his Taser while falling. Seeing Mayes was not debilitated, Swift engaged Mayes, who kicked Swift at least once. (*Id.*) While Swift was attempting to subdue Mayes, Deputy Tollison arrived on the scene. Tollison witnessed Mayes attempting to get up, despite Swift's use of his Taser, so Tollison deployed his own Taser (Dkt. No. 57-3 at 2.) Deputy Rhea arrived during that time and was able to place one of Mayes' hands in handcuffs. Mayes continued to resist, so Tollison deployed his Taser again and struck Mayes with a closed fist. At some point during the struggle, Rhea also struck Mayes with a closed fist. (Dkt. No. 57-4 at 3.) When the defendants were finally able to subdue Mayes, Swift discovered that he had suffered a bloody and broken finger. (Dkt. No. 57-2 at 2.)[2] The defendants then escorted

---

[2] Mayes' version of the events does not differ drastically. He admits that he fled from the officers, but states that he turned around to face Swift merely to turn himself in. (Dkt. No. 30-2 at 3.) He admits kicking Swift during the struggle. (Dkt. No. 63 at 2.) While he states in his response to the defendants' motion for summary judgment that he did not resist arrest that night (*id.*), he ultimately pled guilty to resisting arrest and assaulting Swift. (Dkt. Nos. 57-6, 57-7.)

Mayes back to the other officers, and a Pickens County deputy took him to jail. Mayes asserts that he was denied medical treatment prior to his transportation to Pickens County.[3] In his complaint, Mayes alleges he suffered an eye injury, along with other injuries, and demands $900,000 in for the surgery and to compensate him for his injuries and mental/emotional distress. Further, Mayes alleges the defendants were deliberately indifferent to his medical needs and denied emergency medical attention following his arrest. (Dkt. No. 30.) Subsequently, Mayes pled guilty to resisting arrest and assaulting Swift in the Court of General Sessions for Greenville County. (Dkt. Nos. 57-6, 57-7.)

In the Report, the magistrate judge recommended granting the defendants' motion for summary judgment. First, the magistrate judge stated that Mayes' excessive force claim as to Swift is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). Second, the magistrate judge recommended finding that Tollison and Rhea acted reasonably in their attempt to arrest Mayes. Finally, the magistrate judge recommending finding that the defendants were not deliberately indifferent to Mayes' injuries after the arrest because Mayes did not request medical treatment and did not submit any evidence into the record substantiating the claim that he actually was injured. (Dkt. No. 81 at 5–8.) Mayes timely filed objections to the Report. (Dkt. No. 92.)[4] In his objections, he disputed the defendants' account of the incident and stated that he was attempting to bring a post-conviction relief action in state court to overturn his conviction for resisting arrest and assault. Second, he stated that he suffered substantial injuries, that the defendants were aware of those

---

[3] However, in his statement to a Greenville County "internal affairs investigator," Mayes stated, "I did not ask for medical help," admitting that he did not request medical assistance that night from either Greenville County or Pickens County law enforcement officials. (Dkt. No. 63-1 at 4.)

[4] Plaintiff filed an earlier set of "objections" to the Report, but that document merely contained his disagreement with the facts as presented by the defendants and did not respond directly to any parts of the Report. (Dkt. No. 86.)

injuries, and that he would have accepted treatment if not for the threats by the defendants. (Dkt. No. 92 at 2–3.)

## II.

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) ("Summary judgment is appropriate only if taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party, 'no material facts are disputed and the moving party is entitled to judgment as a matter of law.'") (quoting *Ausherman v. Bank of Am. Corp.*, 352 F.3d 896, 899 (4th Cir. 2003)). In analyzing an excessive force claim at the summary judgment stage, once a court has determined which facts are relevant and drawn all inferences from those facts in the favor of the nonmoving party, the reasonableness of a law enforcement officer's actions is a pure question of law to be decided by the court. *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007).

## III.

### A.

The court will first address Mayes' assertion that he was subject to excessive force during his arrest. The court is persuaded that the defendants acted reasonably in their attempts to arrest Mayes and are therefore entitled to summary judgment.[5]

The Fourth Amendment prohibits unreasonable seizures, including those "effectuated by excessive force." *Schultz v. Braga*, 455 F.3d 470, 476 (4th Cir. 2006). To determine if a law

---

[5] The court notes that Mayes' complaint against Swift is potentially barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), because Mayes asserts that he has filed a post-conviction relief action in state court attacking his conviction upon plea to resisting arrest and assault. However, because Mayes did not include any documents to that effect in his filings, the court has chosen to address the case on the merits as to all defendants.

enforcement officer used excessive force, his actions are analyzed under an objective reasonableness standard. *Scott*, 550 U.S. at 381; *see also Kentucky v. King*, 131 S.Ct. 1849, 1859 (2011) (stating that a court should only ask "whether the circumstances, viewed objectively, justify the [officer's] action"). A court must determine if those actions are objectively reasonable "in light of the facts and circumstances . . . without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989); *see also Waterman v. Batton*, 393 F.3d 471, 477 (4th Cir. 2005) (stating that "reasonableness is determined based on the information possessed by the officer at the moment that force is employed").

Law enforcement officers must often make split-second decisions in the midst of fluid, quickly changing situations, upon which life, death, or serious injury frequently depend. *See Thornton v. United States*, 541 U.S. 615, 621 (2004) (stating that "a custodial arrest is fluid, and '[the] danger to the police officer flows from *the fact of the arrest*, and its attendant proximity, stress, and uncertainty'") (internal citation omitted). Because there "is no way for an officer to predict reliably how a particular subject will react to arrest or the degree of potential danger . . . [e]very arrest must be presumed to present a risk of danger to the arresting officer." *Washington v. Chrisman*, 455 U.S. 1, 7 (1982). Further, because the "act of resisting arrest poses a threat of direct confrontation between a police officer and the subject of arrest, creating the potential for serious injury to the officer," the risk to a law enforcement officer is greatly increased when the arrestee flees. *United States v. Wardrick*, 350 F.3d 446, 455 (4th Cir. 2003).[6] Here, the court is persuaded that the defendants acted reasonably and without excessive force. As the magistrate judge noted, it is undisputed that Mayes fled after initially appearing compliant and ran into a dark, wooded area.

---

[6] Additionally, while an arrest situation narrative may seem extended when viewed in hindsight and with reflection, the situation in real-time may often last no longer than a few seconds or minutes.

The defendants had no way of knowing if Mayes was armed or became armed during the pursuit. When Swift finally caught up with Mayes, he fell, rendering him in a vulnerable position. The only material fact on which the defendants and Mayes disagree is whether he turned to Swift to attack him or to give up. Viewing this fact in the light most favorable to Mayes, the court nonetheless finds that Swift acted reasonably in subduing Mayes by force. Given the history of the incident to that point, Swift had ample reason to act with force. Further, when Tollison and Rhea came upon the situation, they came to the aid of their fellow officer, who was in a struggle with Mayes—who admitted to violently kicking Swift, leading to a broken and bloody finger. Ultimately, it took the efforts of three able-bodied deputies to subdue Mayes. The situation was dangerous—and one which could have led to serious injury to any of the deputies.[7] Under these circumstances and viewed objectively, the court holds that the defendants acted reasonably and with appropriate, non-excessive force.

**B.**

Turning now to Mayes' claims of deliberate indifference, the court likewise holds that the defendants are entitled to summary judgment.

As the magistrate judge noted, state officials may be required "to provide medical care to detainees who have been injured during the course of arrest." *Martin v. Gentile*, 849 F.2d 863, 870–71 (4th Cir. 1988) (citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)). Furthermore, law enforcement is prohibited from exercising deliberate indifference to serious medical needs. *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992). To establish deliberate

---

[7] The court notes that it is not weighing the credibility of the defendants against that of Mayes. The court also notes, however, that Mayes' statements are inconsistent. On the one hand, Mayes asserts he did not resist arrest. On the other hand, Mayes pled guilty to resisting arrest and assault Swift. Now, Mayes states that he is challenging his conviction through a post-conviction relief proceeding.

indifference, "the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990). To state a claim, the plaintiff must "show a serious medical need" and the defendants' "purposeful indifference thereto." *Sire v. Berman*, 934 F.2d 9, 12 (1st Cir. 1987). As the magistrate judge noted, a medical need is serious if it "is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." *Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990).

Mayes has not met his burden. Mayes submitted a document stating that he did not seek medical attention immediately following his arrest. (Dkt. No. 63-1 at 4.) He states now that he did not seek attention because he was threatened by the defendants. (Dkt. No. 92 at 2–3.) However, the defendants turned Mayes over to other law enforcement officers shortly after his apprehension, and an ambulance was available at the scene. (Dkt. Nos. 57-2 at 2, 57-3 at 2, 57-4 at 3.) He did not seek medical attention from any of these other law enforcement officers at the scene. Nor did Mayes seek medical attention on his way to Pickens County in the custody of Pickens County law enforcement. Furthermore, Mayes has entered no evidence into the record that substantiates his claims. As such, the court holds that the defendants are entitled to summary judgment.

### IV.

After a thorough review of the Report and the record in this case, the court adopts the Report and incorporates it herein. (Dkt. No. 81.) It is therefore **ORDERED** that the motion for summary judgment (Dkt. No. 57) is **GRANTED**. Mayes' complaint is **DISMISSED**.

**IT IS SO ORDERED.**

s/Timothy M. Cain  
Timothy M. Cain  
United States District Judge

Greenville, South Carolina  
February 13, 2012

**NOTICE OF RIGHT TO APPEAL**

    The parties are hereby notified of the right to appeal this order pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.